UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DANIEL SMITH, *et. al.*, | ) |
| | ) |
|     *Plaintiffs,* | ) Case No: 1:24-cv-286 |
| | ) |
| v. | ) Judge Curtis L. Collier |
| | ) Magistrate Judge Christopher H. Steger |
| SPECIALTY NETWORKS LLC, *et. al.*, | ) |
| | ) |
|     *Defendant.* | ) |

## **MEMORANDUM**

Before the Court is a motion by Plaintiffs Daniel Smith; Ann Lovell; Dana Jones, individually and on behalf of her minor child A.J.; Vickie Lynn Blevins; Matthew Hammond, on behalf of his minor child R.H. (collectively "Plaintiffs"); Waymon Blevins; and Richard Cohen for order preliminarily approving the Rule 23 settlement agreement in this action. (Doc. 45.) Plaintiffs also request that the Court appoint the settlement administrator and approve the class-action settlement notice, as well as confirm interim class counsel and appoint class representatives. (*Id.* at 1.) Defendants Specialty Networks LLC and Prime Imaging, LLC do not oppose the motion. (*See id.*)

### I.     BACKGROUND

Defendant Specialty Networks LLC is a company that provides information services to its clients, which are medical facilities, including Defendant Prime Imaging, LLC. (Doc. 18 ¶ 2.) In connection with medical services received at these medical facilities, patients provide their private information to Specialty Networks. (*Id.* ¶ 26.) This class action stems from an alleged data breach that happened to Specialty Networks' systems. (Doc. 18 ¶ 8.)

Cyberattacks and data breaches of healthcare records with identifying information have become significantly more common. (*Id*. ¶ 57.) "[I]n the first quarter of 2023 alone, '41,452,622 healthcare records were compromised or impermissibly disclosed.'" (*Id*. ¶ 56 (citation omitted).) The Federal Trade Commission ("FTC") defines identifying information as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person." 17 C.F.R. § 248.201. This personal information is highly sought after by cybercriminals, especially when it includes Social Security numbers and other government identification, which is significantly difficult if not impossible to change. (*See id*. ¶¶ 68–69.) Personal health information, such as patient data, patient diagnosis, lab results, medications, prescriptions, and treatment plans, is also valuable to cybercriminals who pay for it on the dark web. (*Id*. ¶ 71–72.)

On or around December 18, 2023, Specialty Networks became aware of unusual activity within its network that began no later than December 11, 2023. (*Id*. ¶ 38.) An investigation revealed that an unauthorized actor acquired certain data, which potentially included current and former patients' information such as "name, date of birth, driver's license number, Social Security number, medical record number, treatment and condition information, diagnoses, medications, and health insurance information." (*Id*. ¶ 36.) On August 15, 2024, Specialty Networks began notifying approximately 395,866 potentially-impacted individuals by mail. (Doc. 46 at 2.) Substitute notice was provided to 12,234 individuals who were unable to have the notice mailed due to inadequate address information. (*Id*.)

Based on the facts underlying the data breach, Plaintiff Smith filed a complaint against Specialty Networks on August 20, 2024. (Doc. 1.) Following the filing of Plaintiff Smith's complaint, Specialty Networks and Prime Imaging were named as defendants in five other related actions that were materially and substantively similar, as they had overlapping claims, sought to

2

represent the same putative class members, and arose out of the same data breach. (Case No. 1:24-cv-287; Case No. 1:24-cv-288; Case No. 1:24-cv-291; Case No. 1:24-cv-305; and Case No. 1:24-cv-319.) This Court granted a motion to consolidate the related actions on October 8, 2024, and appointed Counsel J. Gerard Stranch, IV as Interim Class Counsel. (Doc. 16.)

On November 7, 2024, Plaintiffs Smith, Lovell, Jones, Vickie Lynn Blevins, Hammons, Waymon Blevins, and Cohen filed a consolidated complaint in the matter with causes of action for negligence, breach of fiduciary duty, breach of third-party beneficiary contract, unjust enrichment, and invasion of privacy. (Doc. 18.)

Quickly after the filing of the class-action complaint, the parties began discussing settlement and scheduled a mediation with experienced class-action mediator, Retired Judge Daryl R. Fansler of Bernstein, Stair & McAdams LLP. (Doc. 46 at 3.) Upon the parties' motion, on January 8, 2025, this Court stayed the case pending mediation. (Doc. 41.)

> In advance of the mediation, Plaintiffs propounded informal discovery requests on Defendants, to which Defendants responded by providing information related to, among other things, the nature and cause of the Data Security Incident, the number and geographic location of individuals potentially impacted, and the specific type of information potentially impacted. The Parties also exchanged mediation statements in advance of the mediation.

(Doc. 46 at 3.) On February 3, 2025, the parties participated in an in-person, full-day mediation. (*Id*.) The mediation was successful and resulted in the parties reaching an agreement on the material terms of a class-wide settlement. (*Id*.) Plaintiffs now move the Court for an order preliminarily approving the settlement agreement. (Doc. 36.) Defendants do not oppose the motion. (*See id*.)

## II. **DISCUSSION**

The parties seek preliminary approval of the settlement agreement under Rule 23 of the Federal Rules of Civil Procedure. Approval of a Rule 23 class-action settlement occurs in three steps: "(1) the court must preliminarily approve the settlement; (2) the class members must be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

The Court will first address whether the settlement agreement should be preliminarily approved. The Court will then address the proposed class notice, as well as the proposed class appointments.

### A. **Rule 23 Preliminary Approval of Settlement**

At the preliminary approval stage, the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). At this stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't*, No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). The Court will address both requirements.

#### 1. **Likelihood of Approval Under Rule 23(e)(2)**

To preliminarily approve the settlement agreement under Rule 23(e)(2), the proposed settlement must be fair, reasonable, and adequate. To determine this, the Court considers whether:

4

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). This rule largely encompasses seven factors known as the *UAW* factors, which the Court of Appeals for the Sixth Circuit uses in its fairness analysis. The *UAW* factors consider: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

The Court will address the Rule 23 factors in turn, often supplementing with the *UAW* fairness factors.

### a. Adequacy of Representation and Arm's Length Negotiation

"The first two factors under Rule 23(e)(2)—adequate representation and whether the proposal was negotiated at arm's length—'identify matters that might be described as 'procedural'

concerns,'" that is, the actual performance of counsel acting on behalf of the class. *Busby v. Bonner*, No. 2:20-CV-2359, 2021 WL 4127775, at *3 (W.D. Tenn. Jan. 28, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. These factors overlap with the first *UAW* factor, the risk of fraud or collusion, and the third *UAW* factor, the amount of discovery engaged in by the parties. "Courts presume the absence of fraud or collusion in class-action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands, LLC*, No. 2:20-CV-2892, 2024 WL 3049464, at *11 (W.D. Tenn. June 18, 2024) (quotation and citation omitted).

Here, class counsel has adequately represented the class. Plaintiffs are represented by class counsel who are "imminently qualified to represent consumer classes" and have "vast experience in data breach litigation." (Doc. 46 at 12 (citing 45-2 ¶ 8).) Class counsel has "diligently and efficiently investigated and prosecuted this action, dedicated substantial resources toward the endeavor, and [has] successfully and fairly negotiated the Settlement Agreement for the benefit of all Class Members." (Doc. 45-2 ¶ 8.) Therefore, the factual record is sufficiently developed for class counsel to make an informed and adequate decision as to settlement. *See Busby*, 2021 WL 4127775, at *3.

The Court also finds the settlement agreement was negotiated at arm's length. On February 3, 2025, the parties attended an in-person all-day mediation that was "undoubtedly hard fought

6

Case 1:24-cv-00286-CLC-CHS   Document 47   Filed 07/15/25   Page 6 of 18   PageID #: 398

and absent of any collusion." (Doc. 46 at 12.) The settlement agreement was "reached after significant research and investigation into the relevant facts and applicable law, including all relevant documents and data, and is the result of vigorous arms'-length negotiations." (Doc. 45-2 ¶ 2.) And importantly, the mediation was conducted by a neutral and experienced mediator, which bears on whether the negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) (quotation and citation omitted).

Further, class counsel and Plaintiffs approve of the settlement, which weighs in favor of approval. (Doc. 46 at 16.) "'The endorsement of the parties' counsel is entitled to significant weight and supports the fairness of the class settlement.'" *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14- cv-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022). For these reasons, the Court finds the settlement agreement is the product of a procedurally fair process. *See Fitzgerald v. P.L. Mktg., Inc.*, No. 2-17-CV-2251, 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020) (citation omitted).

### b. Adequacy of Relief and Equitable Treatment of Class Members

A court must next consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). These

7

factors overlap with the second *UAW* factor, the complexity, expense, and duration of litigation, and the fourth *UAW* factor, the likelihood of success on the merits. Here, each of these factors supports preliminary approval of the settlement agreement in this case.

First, the costs, risks, and delay of trial and appeal favor settlement. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (finding the risks of continued litigation to be the most important factor). Each side believes in their case, but there would be significant uncertainty and risk for both sides if this case were to go to trial, especially due to the "questions of causation, class certification, and the potential for lengthy appeals." (Doc. 45-2 ¶ 7.) *See Fitzgerald*, 2020 WL 7764969, at *2 ("[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial.").

Moreover, continued litigation would be expensive and delay potential recovery further. This is especially true because data breach cases are very complex and "often require significant technological knowledge and testimony from expensive expert witnesses—commonly charging $600 or more an hour." (Doc. 45-1 ¶ 6.) *See Arledge*, 2018 WL 5023950, at *2 (citation omitted) (finding that the complexity of the litigation weighed in favor of settlement). Since this case would be "notoriously difficult and unpredictable," and because "settlement conserves judicial resources," this factor weighs in favor of preliminary approval. *See Granada Invs. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

Next, the proposed distribution methods also support approval. The methods must not be unduly demanding and must instead facilitate filing legitimate claims. Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner

as possible." *Fitzgerald*, 2020 WL 7764969, at *12 (quotation and citation omitted). In this case, the settlement agreement's proposed payment procedures are direct and clear and will be processed by a third-party neutral settlement administrator with the assistance of counsel. (Doc. 46 at 13.) *See Fitzgerald*, 2020 WL 7764969, at *13. The participating settlement class members will receive a settlement award based on "the benefits they select." (Doc. 46 at 13.) They can either submit a claim for a cash payment up to $5,000 per person upon submission of reasonable documentation or they can elect to receive a flat cash payment in an estimated amount of $100. (Doc. 45-1 at 19–20.) Class members may also elect to receive three years of credit monitoring on top of their chosen benefits. (*Id*. at 20.) The "proposal treats class members equitably relative to each other" by offering all individuals the same option of benefits. *See* Fed. R. Civ. P. 23(e)(2)(D).

Lastly, the proposed award of attorney fees is reasonable. A court must examine the attorney fees requested and the timing of their payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, the settlement agreement provides that class counsel may apply for attorney fees "up to one-third of the total value of Settlement, plus reimbursement of reasonable costs." (Doc. 45-1 ¶ 117.) One-third of the total settlement value is within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit. *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014). Based on these factors, the settlement agreement provides adequate relief for the class members.

Having considered all the relevant factors, each of which supports preliminary approval, the Court determines it "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### 2. Likelihood of Settlement Class Certification

The Court must now determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). A court may certify a class for settlement purposes where the proposed class "satisfies each of Rule 23(a)'s requirements and falls within one of three categories permitted by Rule 23(b)." *UAW*, 497 F.3d at 625. The Court will start with the requirements of 23(a).

#### a. Rule 23(a) Requirements

Rule 23(a)(1)–(4) requires numerosity, commonality, typicality, and adequacy of representatives for class certification. The Court will address each factor in turn.

##### i. Numerosity

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Substantial numbers of potential litigants in a class usually raises a presumption of impracticability, yet the numerosity requirement does not involve "a strict numerical test." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). "The plaintiff is not required to 'establish that it is impossible to join all members of the proposed class[,]' but simply that joinder 'would be difficult and inconvenient.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (alteration in original)).

Here, the class exceeds 400,000 individuals, which raises a presumption of impracticability of joinder. *See Daffin*, 458 F.3d at 552. The Court finds that joinder "would be difficult and inconvenient" and that the numerosity requirement is met. *See Swigart*, 288 F.R.D. at 182.

### ii. Commonality

To satisfy the commonality requirement, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *General Tel. Co. v. Falcon*, 457 US. 147, 157 (1982)). The putative members' claims must depend on a common contention capable of class-wide resolution, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

This class action revolves around the same data breach. "[W]hether Defendants owed Plaintiffs and the Class a duty of care to implement reasonable cybersecurity measures and whether Defendants breached that duty" are legal questions common to all members of the class. (Doc. 46 at 18.) Therefore, it is capable of class-wide resolution, satisfying the commonality requirement. *See Dukes*, 564 U.S. at 350.

### iii. Typicality

To satisfy the typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The "claim is not typical if '[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.'" *Woodall v. Wayne Cnty, Mich.*, No. 20-1705, 2021 WL 5298537, at *4 (6th Cir. Nov. 15, 2021) (quoting *Sprague*, 133 F.3d at 399) (alteration in original).

Here, Plaintiffs claims "(1) "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members"; and (2) are "based on the same legal theor[ies]" as other class members' claims." *See In re Flint Water Cases*, 499 F. Supp. 3d 399, 422 (E.D. Mich. 2021) (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007)). Thus, resolving one plaintiff's claims would resolve them for the class, satisfying typicality. *See Sprague*, 133 F.3d at 399.

### iv. Adequacy of Representatives

To satisfy the adequacy requirement, Plaintiffs must demonstrate that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Sixth Circuit has articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. at 576 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)). In addition, the Court should "determine whether class counsel are qualified, experienced, and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)) (internal quotation marks omitted).

The named Plaintiffs' interests are identical to those of the unnamed members of the class, so the "common interests" requirement is accordingly met. As to the second adequacy requirement, Plaintiffs have been available to counsel at every turn. (Doc. 45-2 ¶ 3.)

> They have been involved from the beginning—researching and choosing Class Counsel with vast experience in data breach litigation—and have participated in the matter whenever needed, including by providing information necessary to draft the complaint, by participating in subsequent litigation needs and settlement

discussions, and by providing significant documents and engaging in interviews with Class Counsel.

(*Id*.) The Court concludes that the named Plaintiffs will continue to, through qualified counsel, "vigorously prosecute the interests of the class." *See In re Skelaxin*, 299 F.R.D. at 576. Lastly, as discussed more in-depth above, Plaintiffs are represented by class counsel who are qualified and experienced in this type of litigation. (*See* Doc. 45-2 ¶ 8.) Accordingly, Plaintiffs have met the adequacy requirement for purposes of preliminary settlement certification.

Having found numerosity, commonality, typicality, and adequacy of representation met, the Class satisfies the Rule 23(a) prerequisites.

### b. Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Dukes*, 564 U.S. at 345. Plaintiffs contend the class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Court will address the predominance and superiority requirements of 23(b)(3) in turn below.

#### i. Predominance

To satisfy the predominance requirement, Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This means "a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011). Predominance is satisfied if the class's individual questions of law or fact

13

Case 1:24-cv-00286-CLC-CHS   Document 47   Filed 07/15/25   Page 13 of 18
PageID #: 405

"are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

> At this stage, to conditionally certify a class for purposes of settlement,
>
> the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts. Courts have found that settlements "obviate[ ] the difficulties inherent in proving the elements of varied claims at trial," and consequently, "courts are more inclined to find the predominance test met in the settlement context."

*In re Flint Water Cases*, 499 F. Supp. 3d at 424 (citations omitted).

Plaintiffs have met the predominance requirement for purposes of preliminary settlement certification. The alleged action arises out of a common set of facts because "Plaintiffs' and Class Members' claims all arise from the exact same circumstances—the same Data Security Incident, the same notification and notification timeline, the same alleged failures to implement reasonable cybersecurity, and the same types of harm." (Doc. 46 at 21.) *See Powers,* 501 F.3d at 619 ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

### ii. Superiority

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). A class action is superior if it would "vindicate[ ] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (citation omitted). Relevant factors in this inquiry include the interests of the class members in individually

controlling separate actions, the extent and nature of the litigation already begun by members of the class, and the desirability of concentrating the litigation in a particular forum. *In re Flint Water Cases*, 499 F. Supp. 3d at 425.

Here, the class action is a much better way to adjudicate the matter than individual litigation because there are potentially more than 400,000 class members. As Plaintiffs state, this "would drain judicial and advocate resources." (Doc. 46 at 21.) The Court therefore finds superiority.

Therefore, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the Court finds that it will likely be able to certify the class for purposes of approving the settlement. Accordingly, having decided that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal," the Court will **PRELIMINARILY APPROVE** the settlement agreement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i).

### B. Proposed Notice to Class Members

Next, the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). "The notice should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Meyers v. Dtna Trucks N. Am., LLC*, No. 14-2361, 2014 WL 12531121, at *9 (W.D. Tenn. Oct. 8, 2014) (quoting *UAW*, 497 F.3d at 629–30 (6th Cir. 2007)). The district "court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

> The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;

15

>   (ii)   the definition of the class certified;
>
>   (iii)  the class claims, issues, or defenses;
>
>   (iv)   that a class member may enter an appearance through an attorney if the member so desires;
>
>   (v)    that the court will exclude from the class any member who requests exclusion;
>
>   (vi)   the time and manner for requesting exclusion; and
>
>   (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In this case, the notices meet these requirements and put class members on proper notice of the settlement. *See* Fed. R. Civ. P. 23(c)(2)(B). The respective postcard notices will be distributed to all class members via United States mail through an experienced claims administrator. (Doc. 45-1 ¶ 93.) The settlement administrator will conduct an address trace on all class members whose notice is returned undeliverable and will resend the notice to any updated address found. (*Id.* ¶ 99.) The notices include a link to a settlement website with claim forms or claim forms can be requested by mail. (*Id.* ¶ 43.)

The notices provide class members with a full and fair opportunity to review the settlement terms and make an informed decision. The notices explain clearly why a class member received the notice, what the lawsuit is about, and why there is a settlement. (*Id.* at 60–70.) The notices provide class members with the different payment options available for reimbursement under the settlement and the amount allocated to attorney fees, litigation expenses, service awards, and settlement administration costs. (*Id.* at 65, 68–69.) The notices also explain the process for a class member to object to the settlement and the binding effect of participating in the settlement.

(*Id*. at 67–68.)  Lastly, the notices provide a contact if a class member has additional questions or concerns.  (*Id*. at 69–70.)

The notices are clear and direct.  "All information is presented in an easy-to-read manner with a table of contents and section headings such as 'What am I giving up to get a payment or stay in the Class?' and 'How do I know if I am part of the settlement?'"  *Fitzgerald*, 2020 WL 7764969, at *14.  Thus, the notice adequately apprises the members of the class and affords them the opportunity to make informed decisions in accordance with the requirements of Rule 23(c) and due process.  The Court will **APPROVE** the notice program (Doc. 45-1).

C. **Confirmation of Class Counsel**

Plaintiffs request that the Court affirm its interim appointment of J. Gerard Stranch, IV of Stranch, Jennings & Garvey, PLLC as lead class counsel.  Federal Rule of Civil Procedure 23 authorizes the court to "designate interim counsel to act on behalf of a putative class before determining whether to certify that action as a class action."  Fed. R. Civ. P. 23(g)(3).  When an applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate.  Fed. R. Civ. P. 23(g)(2).  To assess an applicant's adequacy to serve as class counsel, courts must consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Further, any applicant the court appoints "must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

For the reasons previously discussed, the Court will **AFFIRM** its appointment of Mr. Stranch as lead class counsel.

### D. Appointment of Class Representatives

Plaintiffs move the Court to conditionally name them as class representatives. The Court finds that the named Plaintiffs have fairly and adequately protected the interests of the class, as well as fulfilled their duties throughout the litigation, including keeping up with class counsel, being available at all times for calls and emails, and putting their names and reputations into the public record. (Doc. 45-2 ¶ 3.) The Court will therefore conditionally **APPOINT** Plaintiffs as class representatives for the settlement class.

### III. CONCLUSION

The Court will **GRANT** the motion (Doc. 45) and preliminarily approve the proposed settlement agreement (Doc. 45-1). The Court will **APPOINT** Kroll Settlement Administration LLC as settlement administrator. The Court will **APPROVE** the proposed settlement notice plan (Doc. 45-1) and **DIRECT** the settlement administrator to provide notice of the proposed settlement to the class members. The Court will **CONFIRM** Mr. Stranch as lead class counsel and will **APPOINT** Plaintiffs as class representatives. The Court will hold a final approval and fairness hearing on **Thursday, November 13, 2025, at 2:00 p.m. Eastern Time** at the federal courthouse in Chattanooga, Tennessee.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**